(48 Misc. Rep. 317)

In re LOWERRE et al.

(Surrogate's Court, Suffolk County. September, 1905.)

1. EXECUTORS AND ADMINISTRATORS — CLAIMS AGAINST ESTATE — SALE OF REALTY.

The mortgagor gave to an attorney money to pay the mortgage. The party receiving it converted it to his own use, and for years continued to pay interest to the mortgagee. *Held*, that he became the attorney of the mortgagor, and, having misapplied it, became indebted to him in the amount thereof, and, on the death of both, the executors of the mortgagor were creditors, within Code Civ. Proc. § 2750, and entitled to maintain a proceeding for the sale of the agent's real estate to pay the debt.

2. LIMITATION OF ACTIONS—ACKNOWLEDGMENT OF DEBT.

Where a mortgagor gave certain money to an attorney to pay the mortgage, and the attorney converted it to his own use, but continued to pay the interest on the mortgage debt, such payment of interest prevented the statute of limitations from running on the mortgage debt, and on the claim against the attorney for the conversion of the money, and was an acknowledgment on his part of the debt.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, § 622.]

In the matter of the application of Catharine A. Lowerre and Mary A. Robbins, for leave to mortgage, lease or sell real estate of John R. Reid to pay debts. Application granted.

Nicoll & Young, for petitioners.
Eugene Fishel (Walter H. Jaycox, of counsel), for administrator.

BELFORD, S. This is a special proceeding brought, under section 2750 of the Code, for the sale of the real estate of John R. Reid, deceased, for the payment of a debt alleged to be due the petitioners as executors of the will of James Bulger, deceased. The allegation of the petitioners as to the debt is as follows: The sum of $3,500 and interest was due and owing from said John R. Reid to said James Bulger in his lifetime and to your petitioners after his death; said claim being for money paid by said James Bulger to said John R. Reid on or about the 12th day of April, 1883, for the purpose of paying the same to one Marietta Purdy, and being the amount due and unpaid on a bond and mortgage held and owned by her, which said mortgage was a lien upon certain real property then owned by said James Bulger and which said sum the said John R. Reid failed and neglected to pay to said Marietta Purdy, but retained the same and applied the same to his own use without the knowledge of the said James Bulger. The evidence offered by petitioners to establish their claim is substantially as follows: The witness Hobby testifies that in 1883 he had charge of Mr. Bulger's business and bank account, and that in April of that year he drew a check for Mr. Bulger to the order of Marietta Purdy for $3,500, in payment of the mortgage on the Pearsall farm (conceded to be the mortgage in question), and that he handed the check to Mr. Bulger; that the check was afterward paid by the bank on which it was drawn and was finally returned to Mr. Bulger by the bank when his book was

balanced about a year after it was drawn. The witness George H. Todd testifies that he was formerly an employé of Mr. Bulger's; that some time in the spring of 1883 he went with Mr. Bulger to Judge Reid's office; and that Mr. Bulger on that occasion handed Judge Reid an envelope with a paper inclosed therein, and that Mr. Bulger said to Judge Reid that he would find in the envelope a check for $3,500, for the mortgage on the Pearsall place, held by Mrs. Purdy, of Amityville. He further testifies that Judge Reid opened the envelope, took out and inspected the inclosure which to the witness looked like a check; that Mr. Bulger said, "Now that takes the black eye off the Pearsall place"; and that to this remark made by Mr. Bulger, Judge Reid replied, "Yes, that wipes all the stain out."

None of this testimony is contradicted. The check itself was not produced, but its absence, after so long a time, is accounted for by one of the witnesses, John H. Bulger, who says that a number of old checks of Mr. Bulger's were destroyed while in his custody, and that he has made diligent search for this check but is unable to find it. It would be natural to presume from the foregoing facts that the money represented by this check was paid to Mrs. Purdy, but Mrs. Purdy was examined as a witness and testified that she never received the principal of the mortgage from Judge Reid nor from Mr. Bulger, nor from his legal representatives, but that the mortgage, being unpaid, was foreclosed in the year 1904, after the death of both Judge Reid and Mr. Bulger, and that the amount due was paid on the foreclosure and sale of the mortgaged premises. We have, therefore, this chain of facts uncontradicted: First. The check for the amount of the mortgage was drawn. Second. It was delivered to Judge Reid. Third. Mrs. Purdy never received the money.

From this evidence it is impossible to reach any other conclusion than that Judge Reid received the money. But this is not all. It appears by the testimony of Mrs. Purdy that Judge Reid continued to pay her the interest on it every year from the time the mortgage was assigned to her by Judge Reid as administrator of James Reid, in 1871, to the date of his death, in 1902, a year and six months subsequent to the death of Mr. Bulger. In confirmation of this statement she produces, and there were received in evidence, nine letters which were written and sent to her by Judge Reid between 1894 and 1902, inclusive, in all of which he mentions the interest on this mortgage, and in several of which he refers to a check which he incloses for $175 yearly interest. Three of these letters were written subsequent to Mr. Bulger's death. On April 1, 1901, he writes:

"Inclosed please find check to cancel interest on Pearsall mortgage to date. The mortgage will not be paid off during the coming year."

In February, 1902, he writes:

"The parties responsible do not wish to pay the principal of the Pearsall mortgage this year. When they want to pay the principal you will have at least three months' prior notice. I will have the interest for you when it is due. I will mail you check on or about the first of April."

On the 25th of March, 1902, he writes, inclosing the check for the interest. In some of these letters he speaks of having received a draft for the money which he offers to send or to hold till she calls at

his office. Now, if such drafts had actually been received by Judge Reid, there would be some foundation for a possible supposition that the $3,500 check had been disposed of in some mysterious way, and that after all Mr. Bulger had not carried out his purpose of paying the mortgage and taking the "black eye" off the farm. And it is obvious that some of these drafts must have been received from the executors after Mr. Bulger's death. But both the executors were sworn as witnesses, and both testified that no such drafts had been made, so that the conclusion is inevitable that Judge Reid paid of his own volition and out of his own pocket the interest on the mortgage for the two years 1901 and 1902, and little room is left for doubt that he did the same for all the years prior thereto and subsequent to the delivery of the $3,500 check to him. I am therefore unable to reach any other conclusion than that Judge Reid received and applied to his own use this money. The mortgage remained a lien upon Mr. Bulger's land. He subsequently conveyed the land with a warranty that it was free of incumbrance, and of course he and his estate were and are liable upon the covenant. Accepting this money from Mr. Bulger, for the purpose for which Mr. Bulger paid him the money, constituted Judge Reid the attorney for Mr. Bulger. Mr. Bulger evidently trusted him and placed the money in his hands for the purpose of extinguishing the mortgage, expecting him to do whatever was necessary to be done to accomplish this result.

It is suggested that there appears to have been no request made by Mr. Bulger for a satisfaction piece to have been furnished him or any request that the bond and mortgage should be delivered to him after payment, but it is evident that Mr. Bulger's trust in Judge Reid was full and complete. It appears from the testimony of Todd that he went with Mr. Bulger to Judge Reid's office on many occasions on legal business, and Mr. Bulger could fairly assume that Judge Reid would do all that it was necessary and proper for him to do under the circumstances. Having accepted the money and agreed with Mr. Bulger as to the disposition of it, thenceforth he was the attorney for Mr. Bulger and having misapplied the money he was liable for it without any demand. The language of Wood v. Young, 141 N. Y. 217, 36 N. E. 193, seems to completely fit this case:

"The facts of the case establish no other legal relation between the parties than that of debtor and creditor."

It was the ordinary case of the receipt of money from one to and for the use of another in which the duty rests upon the party receiving the money from the moment of its receipt to pay it over to the party for whose use it was received. It was Mr. Bulger's money. Judge Reid had no lien upon it, no right to retain it, nor any trust duty to discharge in respect to it. The law imposed upon him the obligation to pay it over to Mrs. Purdy as soon as it was received, or at least within a reasonable time, and the obligation of the party who has received the money in such cases to pay it over and his liability in an action to recover the same without any demand before suit has been firmly settled by a long line of cases, so that I decide that the debt is clearly established, and that no demand was necessary before instituting the proceeding.

The answer of the administrator sets up as a complete defense to this proceeding the statute of limitations, and we are met with the question as to whether or not the yearly payments of interest to Marietta Purdy constituted such payment as will take this debt out of the statue of limitations.   Why were these payments made to Marietta Purdy?   What was the object of their payment?   Plainly and obviously to prevent any action on Mr. Bulger's part.   Having placed this money in Judge Reid's hands, Mr. Bulger has a right to assume that his instructions with reference to the disposition of the fund had been fully carried out.   And Mrs. Purdy, receiving her interest from year to year with unfailing regularity, would have no reason to make any demand upon Mr. Bulger.   And it seems to me that this brings the case fairly within the doctrine of Wakeman v. Sherman, 9 N. Y. 85, where it is held:

"That to revive a demand thus barred there must be an express promise to pay, ＊ ＊ ＊ or an acknowledgment of the debt as subsisting ＊ ＊ ＊ made to the creditor or some one acting for him, or, if made to a third person, must be calculated and intended to influence the action of the creditor."

The payment of the interest to Mrs. Purdy must have been with the purpose to prevent action by Mr. Bulger to compel the restitution of the money.   It was, so far as the acknowledgment of the debt was concerned, equivalent to a payment direct to Mr. Bulger.   When Mr. Bulger paid to Judge Reid the money that was to go to Mrs. Purdy, a right of action against Judge Reid arose in her favor to recover the money, and she could have sued him for it at any time.   Now, so long as Judge Reid paid her the interest, her cause of action was not barred by the statute of limitations.   And if Judge Reid could not set up the statute as against her, it is quite clear that he could not have set it up as a defense against Bulger.   In this transaction Judge Reid was Mr. Bulger's attorney, and the yearly payments of interest to Mrs. Purdy were in my opinion just as effective to take the claim out of the statute of limitations as if they had been made to Mr. Bulger himself.   I therefore decide that the claim is not barred, and that the proceeding for the sale of the real estate can be maintained.

Issue is raised by the answer as to whether one of the pieces of real estate described in the petition is or is not subject to the lien of a mortgage given upon premises which were subsequently conveyed and from which conveyance this particular parcel was excepted.   I am not aware that it is within the power of the Surrogate's Court to pass upon a question of this kind, nor is it necessary to do so. There is no dispute that the fee of this particular parcel was in Judge Reid at the time of his death.   It can therefore be sold subject to any liens that may be upon it, and the petitioners must take such measures in that behalf as seem to be proper.

The prayer of the petition is therefore granted, with costs to the petitioners.

Application granted, with costs.