## MYERS v. MUSKEGON IMPROVEMENT CO.

LIMITATION OF ACTIONS — ATTORNEY AND CLIENT — PAYMENT — EXTENSION OF TIME — BILLS AND NOTES — INDORSERS.

Where indorsers of a promissory note who became indorsers before its execution, acted as attorneys for the estate of the deceased payee, having in their possession the paper and frequently corresponded with the executors of said estate without notifying them that there was any danger of their liability under the indorsement being barred by the statute of limitations, and where the attorneys treated the notes as their own, collecting money upon them and retaining part of it, for-

warding to the executors sums received in partial payment which were indorsed on the instrument, the remittances so made operated as an extension of the indorsers' liability under the statute of limitations.

Error to Muskegon; Davis, J., presiding. Submitted November 24, 1911. (Docket No. 182.) Decided May 3, 1912. Rehearing denied July 22, 1912.

Assumpsit by Henry E. Myers and Edwin F. Holmes, as administrators of the estate of John L. Woods, deceased, against the Muskegon Improvement Company and others upon a promissory note. Judgment for defendants. Plaintiffs bring error. Reversed.

*Clapperton & Owen,* for appellants.

*John Vanderwerp* and *Wallace Foote* (*Edward Waer,* of counsel), for appellees.

BROOKE, J.   Plaintiffs sue upon a promissory note for $5,000, dated December 21, 1891, due 18 months after date, with interest payable semi-annually at the rate of 7 per cent. per annum.  The note was executed by the Muskegon Improvement Company, by G. L. Mason, president, and Geo. L. Erwin, secretary, and was indorsed by Geo. L. Erwin, G. L. Mason, F. H. Holbrook, David D. Erwin, and F. A. Nims.

The note bears the following indorsements:

"July 16, '92, int. paid to June 21, '92, $175.50.

"Feb. 16, '93, int. to Dec. 21, '93, paid by check, $176.50.

"May 9, 1896, int. paid to May 5, 1896, $1,113.44.

"H. E. Myers, Trustee.

"April 22, 1901, received $50.00 on the within note.

"Feb. 20, 1904, received $82.23 on the within note.

"Dec. 20, 1905, received $15.00 on the within note."

The declaration was filed March 24, 1908.  Defendants pleaded the general issue with notice that they would insist, in their defense, upon the statute of limitations.

The loan represented by this note, as well as several

others, was made by John L. Woods, in his lifetime, upon the application of David D. Erwin, whose law firm, Smith, Nims, Hoyt & Erwin, had acted as attorneys for him in several matters in Muskegon and who had been personally associated with Mr. Woods in the mining business. The Muskegon Improvement Company, the maker of the note, was composed of David D. Erwin, Geo. L. Erwin, F. A. Nims, F. H. Holbrook, and G. L. Mason, all of whom indorsed the paper. At or shortly after the time the note was given, David D. Erwin took assignments to Mr. Woods from the Muskegon Improvement Company of three different mortgages as collateral to said note. One of these was the Shaw Electric Crane Company mortgage for $2,625; the second, the Wm. B. McLaughlin mortgage for $4,000; and the third, the Mason mortgage for $2,700. These collateral securities, as well as the note to which they were collateral, were retained in the hands of David D. Erwin until about March, 1893, shortly before the death of Mr. Woods, which occurred on the 27th day of that month. David Erwin indorsed the first two payments of interest upon the note. There is a dispute between the plaintiffs and defendants as to the whereabouts of the note after the death of Mr. Woods, but it is clear that it was in possession of the executors of the estate at the time of the payment of the interest of May 9, 1896. In December, 1895, ancillary administration upon the estate of John L. Woods was taken out in Michigan; David D. Erwin's firm acting for the estate and giving the necessary bond. The collateral taken by Mr. David D. Erwin to secure his note seems to have been taken by him of his own motion and without the knowledge of Mr. Woods. Whether the note itself was in the hands of David D. Erwin after the death of Mr. Woods or in the possession of his firm is a disputed question, but there can be no doubt that the collateral remained for many years in the possession of either Mr. Erwin or his firm. In September, 1901, a power of attorney was executed by the executors to David D. Erwin by which he

was empowered to execute instruments of release of the lots covered by the Mason and McLaughlin mortgages. On May 5, 1901, a computation of the amount then due upon the note was made and certified to by Geo. L. Erwin, secretary of the Muskegon Improvement Company, and David D. Erwin; the balance then being fixed at $6,700. The three indorsements upon the note bearing the dates April 22, 1901, February 20, 1904, and December 20, 1905, respectively, for $50, $82.23, and $15, represented sums of money collected by David D. Erwin from the collateral and forwarded by him to the executors of the estate. A voluminous correspondence appears in the record, from which it clearly appears that the plaintiffs relied upon David D. Erwin or his firm, and principally upon David D. Erwin, to procure payment of the debt secured by the note. It should be noted that at the time the Shaw Electric Crane Company mortgage was assigned to Woods as collateral security, there was due or to become due thereon $2,625, represented by three notes. The record shows that these three notes were paid after the assignment to Woods to the defendants, but that only one of them was applied upon the note to which the mortgage was collateral. This application is indicated by the indorsement upon the note of May 9, 1896.

Under these facts, the learned circuit judge made the following conclusions of law:

"(1) There has been nothing shown in this case, so far as the defendants, Muskegon Improvement Company, Geo. L. Erwin, David D. Erwin, and Frederick A. Nims are concerned, making them liable to the plaintiffs under the pleadings in this case.

"(2) The note upon which this action is brought became barred against the defendants, Muskegon Improvement Company, Geo. L. Erwin, David D. Erwin, and Frederick A. Nims, by the operation of the statute of limitations, June 21, 1899, six years after its maturity.

"(3) The payments made on the note after its maturity were payments received for the release of property from the collateral mortgages securing it, and were remitted

by David D. Erwin with no intent to renew his obligation as indorser on such note, and did not stop the running of the statute of limitations against him, or against any of the other indorsers.

" (4) The acknowledgment of Geo. L. Erwin, as secretary of the Muskegon Improvement Company, in May, 1901, of the correctness of the computation of the amount due on said note, did not extend the period of limitation as against the Muskegon Improvement Company, for a longer period than six years from the date of said acknowledgment, if it extended said period of limitation at all, and did not have the effect of renewing or reviving the obligation of any of the indorsers to said note, or of stopping the running of the statute of limitations, as against said indorsers.

" (5) There has been no acknowledgment or new promise on the part of the Muskegon Improvement Company, Geo. L. Erwin, David D. Erwin, or Frederick A. Nims, within six years, which stop the running of the statute of limitations as against them, or which would take the note in suit out of the operation of the statute.

" (6) There was no concealment of the cause of action represented by this note, which would stop the running of the statute of limitations.

" (7) There was no fiduciary relationship, or relation of trust and confidence between any of the defendants and the plaintiffs, with respect to the note in suit, and the defendants were under no obligations to inform the plaintiffs of the running of the statute of limitations against said note.

" (8) There was no concealment, misrepresentation, or fraudulent conduct on the part of David D. Erwin or Frederick A. Nims, or on the part of the firm of Smith, Nims, Hoyt & Erwin, which would estop the defendants, the Muskegon Improvement Company, Geo. L. Erwin, David D. Erwin, and Frederick A. Nims, from setting up the bar of the statute of limitations in this suit, and they are not estopped from setting up such bar.

" (9) The note upon which this suit is brought is barred by the statute of limitations, against the defendants, Muskegon Improvement Company, Geo. L. Erwin, David D. Erwin, and Frederick A. Nims, and judgment should be rendered for said defendants in this suit.

"Dated March ——, 1909.

"F. D. M. DAVIS,
"Circuit Judge."

Plaintiffs duly excepted to the findings of law and assert: *First.* That defendants should be held to be equitably estopped from insisting upon their plea of the statute of limitations by reason of the confidential relations existing between the executors of the estate and David D. Erwin, who was acting for all of the defendants in the matter; and, *second*, that the payments made upon the note by David D. Erwin, which he received from the collateral, should, under the circumstances of this case, be held to constitute a new promise, thus preventing the running of the statute.

We will first consider the latter proposition.

The five indorsers upon the note were not merely sureties, but were original makers thereof, and together they constituted the association, the Muskegon Improvement Company, the property of which was held in the name of Geo. L. Erwin, trustee. The assignments of collateral mortgages were made under the direction of David D. Erwin to John L. Woods; but these assignments and the notes and mortgages accompanying them were retained by David D. Erwin in his own possession until 1901, when they were sent to the agent of the executors of the Woods estate, and in September of that year returned to David D. Erwin, and remained there until 1906. These collateral notes and mortgages were originally given to Geo. L. Erwin, trustee for the five individuals who signed the note in suit, and he assigned them to John L. Woods. The property for which the notes and mortgages were given was the property of the five men who made the note in suit. And the notes and mortgages themselves, though standing in the name of Geo. L. Erwin, trustee, actually belonged to the same individuals. Subject to the assignment to Woods as collateral, they still owned them, so that when any money was collected from any of them it belonged to the five makers of the note subject to the duty to pay it over to Woods by reason of the assignment to him. The three notes to which the Shaw Electric Crane Company mortgage was collateral were paid to the defendants

as follows: May 24, 1892, $901.67; December 31, 1892, $927.94; May 10, 1893, $954.19. These payments were all made after the assignment to Woods, but no application thereof was made on the Woods note until May 5, 1896, when one only of the three payments, with interest thereon, was so applied.

It is suggested, and we think with reason, that in November, 1892, the Mason mortgage was substituted as collateral for the Crane mortgage; the assignment from Erwin to Woods was not recorded, however, until 1901, when it was recorded with the power of attorney to David D. Erwin. If this was done, the record fails to show that either Woods in his lifetime, or his executors after his death, consented to such substitution. The correspondence between the parties clearly shows that little was known of the collateral by the executors and that they looked to David D. Erwin to protect the estate, and it is equally clear that in his correspondence, collections on collateral, and payments upon the note, David D. Erwin acted for all the defendants as well as for himself. The whole course of dealing, with reference to this collateral, was such, on the part of David D. Erwin, acting for all the defendants, as to convince us that they handled and treated it as their own property. Nearly $2,000 of the moneys arising therefrom was retained by them without the knowledge of Woods or his executors that the payments had been made. Under these circumstances, we are disposed to hold that when on April 22, 1901, David D. Erwin collected from one of the mortgages, which he and his four associates owned subject to the assignment as collateral to Woods, and forwarded the same to the executors to be applied upon the note, said payment should be considered as a voluntary admission by the defendants that the debt was then due, from which a new promise can and should be implied. At that time no payments had been made upon the note for nearly five years, but the correspondence shows that during the period frequent inquiries were made by and on behalf of the executors,

which were responded to by David D. Erwin. On February 20, 1904, the firm of Smith, Nims, Hoyt & Erwin, by David D. Erwin, remitted to the executors a further sum of $82.23, collected from the same source, which was duly credited upon the note.

We have held that a new promise will not be implied from a partial payment where such payment is made under such circumstances as will preclude such inference. *Home Life Ins. Co.* v. *Elwell*, 111 Mich. 689 (70 N. W. 334); *Westinghouse Co.* v. *Boyle*, 126 Mich. 677 (86 N. W. 136, 86 Am. St. Rep. 570); *Borden* v. *Fletcher's Estate*, 131 Mich. 220 (91 N. W. 145). We are of opinion that the instant case presents no such circumstances. From 1901 to 1906, the custody, control, and collection of these collateral mortgages was unquestionably in the hands of David D. Erwin for himself and his codefendants, acting under a power of attorney given him by the executors at his request. He decided what property should be released and at what price. During all these years, no act was done by the representatives of the estate touching the collection of the collateral. No hint was given by him to the plaintiffs who were residents of a foreign jurisdiction, throughout a voluminous correspondence, that unless care was taken the statute of limitations might run against the paper. Indeed, it was not until May 16, 1907, that David D. Erwin repudiated legal liability when he wrote:

"While we decline to recognize any legal liability on our part, on the note in question, Mr. Nims and I feel a moral responsibility concerning it which we intend to discharge when and as our available means will permit, and if our intention is thwarted, it will largely be brought about by your avowed purpose to bring suit. There are considerations involved that we do not feel called upon to discuss with any one except Mr. Myers or Mr. Holmes."

Upon principle, the instant case much resembles the case of *Whipple* v. *Blackington*, 97 Mass. 476. There, the holder of a promissory note delivered it to his creditor as collateral, with the understanding that any sum col-

lected on it should be applied to his debt.  Afterwards, as agent for his creditor, he collected a dividend on the note from the estate of the maker in insolvency and paid it over to his creditor, who on the date thereof applied it upon the debt.  The court there said:

" Not only was the note given as collateral security for the account, but the defendant notified the plaintiffs that the dividend was due, acted as their agent in collecting it, and himself paid it over.  This was equivalent to an express request and authority to receive the money and apply it upon the account.  If the account was then already paid, the money to be received upon the collateral security would have belonged to the defendant."

Our conclusion that the later payments indorsed upon the note (made under the circumstances indicated) serves to prevent the running of the statute renders it unnecessary to discuss plaintiffs' first proposition.

The judgment is reversed, and a new trial ordered.

STEERE, McALVAY, BLAIR, and BIRD, JJ., concurred.