## MYERS *v.* MUSKEGON IMPROVEMENT CO.

1. LIMITATION OF ACTIONS—BILLS AND NOTES—EVIDENCE—INDORSEMENT OF PAYMENTS.

   To establish that an indorser of a promissory note consented to indorsements of small payments that were made through one of his firm, who were attorneys for the holder, it was not essential to prove his actual words or to show his consent in writing, but the consent and authority might be implied from his relations. circumstances and other facts having a bearing.

2. SAME—KNOWLEDGE—PAYMENTS.

   And the tolling of the statute of limitations was not ap-

plicable, nor did the statute cease to run, where another indorser was under obligations to apply payments on the collateral security to satisfy the note, but failed to carry out .the obligation during part of the time: it could not be said that the indorsers were voluntary trustees so as to interrupt the operation of limitation of action. The cause of action would be barred two years after it was discovered, under 3 Comp. Laws 1915, § 12330, relating to causes of action fraudulently concealed.

Error to Muskegon; Sullivan, J. Submitted October 18, 1916. (Docket No. 123.) Decided December 21, 1916.

Assumpsit by Henry E. Myers and Edwin F. Holmes, administrators of the estate of John L. Woods, deceased, against the Muskegon Improvement Company, George L. Erwin and others upon a promissory note. Judgment for defendants. Plaintiffs bring error. Affirmed.

*Clapperton, Owen & Hatten* (*Stephen H. Clink*, of counsel), for appellants.

*Hatch, McAllister & Raymond*, for appellee Raymond.

STONE, C. J. This is the third appearance of this case in this court. It was begun by declaration filed March 24, 1908. When here first, it was reported in 169 Mich. 689 (135 N. W. 949), and the second time in *Myers* v. *Erwin*, 180 Mich. 469 (147 N. W. 458). A reference to those opinions will render an extended statement of the case here unnecessary.

It is the claim of the defendant George L. Erwin, who alone defends in this case, that there is only one question involved in this appeal, and that is whether the payments on May 19, 1902, of $50, on February 20, 1904, of $82.23, and on December 20, 1905, of $15,

prevented the running of the statute of limitations as to the defendant, and it is claimed that, if none of these payments prevented the running of the statute of limitations as to him, the note is barred, since all the other payments were made more than six years before the commencement of the suit, and the statute of limitations was duly pleaded, and it is said that these payments would not keep the cause of action alive, unless they were made under such circumstances as to raise an implied promise on the part of George L. Erwin to pay the debt; that these payments were all made by David D. Erwin with money received for and upon the release of lots from the mortgages held as collateral to the note sued upon, and it is urged that George L. Erwin, as only one of two or more joint contractors, would not lose the benefit of the statute of limitations, so as to be chargeable by reason only of any payment made by any other or others of the joint contractors—citing 3 Comp. Laws, § 9745 (3 Comp. Laws 1915, § 12336), 5 How. Stat. [2d Ed.] § 14152.

The plaintiffs claim that, *first*, the defendant should be held to be equitably estopped from insisting upon his plea of the statute of limitations by reason of the confidential relations existing between the executors of the estate and David D. Erwin, who was acting for all of the defendants in the matter; and also, *second*, that the payments made upon the note by David D. Erwin, which he received from the collateral, should, under the circumstances of this case, be held to constitute a new promise, thus preventing the running of the statute. When this case was first before this court, plaintiffs asserted that the payments made upon the note by David D. Erwin, being the last three, of $50, $82.23, and $15 respectively, which he received from the collaterals, should, under the circumstances of the

case, be held to constitute a new promise, thus preventing the running of the statute of limitations.

Upon the first trial in the court below, upon findings of the court, judgment had been entered for the defendants. This court held that, upon the record as it stood then, without the testimony of Thomas Hume or of the defendant George L. Erwin, the collateral notes and mortgages were originally given to George L. Erwin, trustee, for the five individuals who signed the note in suit, and he assigned them to John L. Woods; that the property, for which the notes and mortgages were given, was the property of the five men, including this defendant; that the notes and mortgages themselves, though standing in the name of George L. Erwin, trustee, actually belonged to the same individuals; and that, subject to the assignment to Woods as collateral, they still owned them, so that, when any money was collected from any of them, it belonged to the five makers of the note, subject to the duty to pay it over to Woods, by reason of the assignments to him. After setting forth the circumstances relating to the payment of the Shaw Electric Crane Company notes and mortgage, and the substitution of the Mason mortgage therefor, Justice BROOKE, speaking for the court, said:

"Under these circumstances, we are disposed to hold that when, on April 22, 1901, David D. Erwin collected from one of the mortgages, which he and his four associates owned subject to the assignment as collateral to Woods, and forwarded the same to the executors to be applied upon the note, said payment should be considered as a voluntary admission by the defendants that the debt was then due, from which a new promise can and should be implied. At that time no payments had been made upon the note for nearly five years, but the correspondence shows that during the period frequent inquiries were made by and on behalf of the executors, which were responded to by David D. Erwin. On February 20, 1904, the firm of Smith, Nims, Hoyt & Erwin, by David D. Erwin, re-

mitted to the executors a further sum of $82.23, collected from the same source, which was duly credited upon the note."

The opinion concludes in this language:

"Our conclusion that the later payments indorsed upon the note (made under the circumstances indicated) serve to prevent the running of the statute renders it unnecessary to discuss the plaintiffs' first proposition."

That proposition was that the defendants should be held to be equitably estopped from insisting upon their plea of the statute of limitations by reason of the confidential relations existing between the executors of the estate and David D. Erwin, who was acting for all of the defendants in the matter.

When the case came before this court the second time from a directed verdict and judgment for plaintiffs, the record contained the testimony of George L. Erwin for the first time, and we held that that introduced into the case evidence of certain new facts, namely:

"That he was never a member of, nor connected with, the law firm of which David D. Erwin and F. A. Nims were members, and knew nothing about their transactions with John L. Woods, whom witness had never seen and did not know personally; that the Muskegon Improvement Company failed, turned over all its remaining property to trustees, held no more meetings, and went out of business in 1894, at which time he severed his connection with the concern; that he had been absent from Muskegon most of the time for 12 or 13 years and supposed the improvement company's matters were all closed up; that he had no interest in the collateral given to secure the note in question, nor in any surplus which might arise therefrom after such note was paid; that he had no knowledge David D. Erwin made any collections on such collateral, or any payments on said note subsequent

to 1894, and had never, directly or indirectly, authorized or consented to the payments in question."

Justice STEERE, writing the opinion, which was concurred in by all of the Justices, said:

"These were statements of fact not in the previous record. If they are true, the payments in question, made by David D. Erwin without appellant's knowledge or consent, would not deprive the latter of claiming the benefit of the statute of limitations, which by his plea he has sought refuge under [citing the statute and decisions of this court]. There is evidence in this record, some of it documentary, tending to negative appellant's testimony, but the conflicting testimony raised issues of fact in the case which were not for the court to decide in a jury trial, and which should have been submitted to the jury under appropriate instructions as to their legal significance and directions as to what verdict should be rendered according as the jury might determine the facts."

And the judgment below was reversed and a new trial granted. The case has been again tried on substantially the same evidence and submitted to a jury, which returned a verdict for the defendant George L. Erwin, he alone contesting on that trial, and a judgment was entered accordingly.

A careful perusal of both of the opinions above referred to will show that the question whether the defendants should be held to be equitably estopped from insisting upon their plea of the statute of limitations, or whether there was any fraud, of which this defendant had notice, in dealing with the Shaw Electric Crane Company mortgage and notes, has never been disposed of by this court. Justice STEERE, in the course of his opinion, simply disposed of the question whether, in view of the testimony of George L. Erwin, the payments made by David D. Erwin were binding upon George L. Erwin, and did not deal with the question of confidential relations or fraud.

Aside from the three assignments of error which relate to the admission of certain testimony, against the objection and exception of the plaintiffs, which we do not think of sufficient importance to discuss, the remaining assignments of error relate to the failure to direct a verdict, and to give certain requests of plaintiffs to charge, and to the charge of the court.

A motion was made at the close of the evidence on the part of the plaintiffs for the direction of a verdict in their behalf, based upon the transactions connected with the Shaw Electric Crane Company mortgage and notes, to the effect that the defendant and his associates, after the assignment of that mortgage as collateral to secure the payment of the note sued upon, collected considerable sums of money upon the notes of the Shaw Electric Crane Company, as appears by the books of the company, and that the testimony was undisputed that that money came into the hands of the defendant, and that no application was ever made of those moneys except as to one note; that those moneys, when the defendant and his associates collected them, were the moneys of John L. Woods; that when the defendant and his associates took those moneys into their hands in 1892 and 1893, and held them without application upon the principal note, they became the trustees of that fund in law, and that they have continued to hold it as such; that such moneys in their hands constituted a voluntary trust against which the statute of limitations did not run. This motion was denied, and exception duly taken, and the ruling is made the basis of the seventh assignment of error.

The court was requested to instruct the jury as follows:

"(1) 'I charge you as matter of law that if, after the assignment of the Shaw Electric Crane Company mortgage to John L. Woods as collateral security for

the payment of the note in question in this suit, the defendant and his associates collected payments from the Shaw Electric Crane Company thereon, it was the duty of the defendant and his associates to apply the same as payment upon the note in suit, and if such moneys were not so applied, but were retained by the defendant and his associates, and by them converted to their own use, the law will regard the defendant and his associates as trustees, and that such trust is a voluntary one, and the statute of limitations does not run in the case of a voluntary trust until the same is declared, or notice thereof given to the party to be affected, and in a suit like this the law will apply such moneys to the payment of the note in suit, at any date that it is found in the hands of the defendant, as equity and justice and fair dealing may require, and when such moneys are so applied in this suit, such application will prevent the running of the statute of limitations, so as to bar a recovery.'

"(2) 'I charge you as matter of law that, under the undisputed facts established by the proofs in this case, your verdict must be for the plaintiff for the amount of the note of $5,000 and interest thereon.'

"If the foregoing are refused, then the plaintiff requests that the following may be given:

"(3) 'I charge you as matter of law that it is not necessary, in order to show that George L. Erwin authorized and consented to the indorsements in question upon this note, to prove that he in words stated to anybody that he authorized it, or that he in words or writing stated that he consented to it. But the fact of his consent and authorization may be inferred by you from his relations to the business, from his conduct in connection therewith, from the character of his relations with his associates, and from all of the facts and circumstances in connection therewith as shown by the testimony in the case, if you believe that they warrant and justify that conclusion on your part.'

"(4) 'It is your duty, in deciding the matters submitted to you by the court, to consider fully and fairly all of the testimony allowed to be introduced by the court, including that which is documentary, and give it such credit and force and effect as you believe that it is entitled to.'

"(5) 'I charge you as matter of law that, if the defendant George L. Erwin did know, or had good reason to know, that the payments in question were indorsed upon this note, and did not raise any objection, but acquiesced therein, that that is the equivalent of consent and authorization, and that he is, if you find such to be the fact, liable upon his indorsement, and your verdict should be for the plaintiff.' "

Upon that branch of the case relating to the payments of $50, $82.23, and $15, above referred to, an examination of the charge of the court satisfies us that the case was properly submitted to the jury.

The third request was given in full. The fourth and fifth requests were given in substance, and we do not think the plaintiffs were entitled to have the second request given. Neither do we think that the trial court erred in refusing to give the first request to charge. Had the payment of the Shaw Electric Crane Company notes been applied upon the note in suit, and had the same been reported and forwarded to the plaintiffs in 1892 and 1893, when collected, as plaintiffs claim should have been done, that would not have prevented running of the statute, for those notes were paid to defendants long before the payments that were reported and held to imply a new promise. In a suitable action, brought within two years after the plaintiffs discovered that they had a cause of action for the moneys so collected and converted, under the provisions of section 9739, 3 Comp. Laws (3 Comp. Laws 1915, § 12330), the plaintiffs might have recovered the amount of the two notes collected by defendants and not reported and paid over. But that is not this action. This is a suit upon the original note given by the defendants to Woods, and not for the moneys claimed to have been collected and wrongfully converted by them.

We do not think that the cases cited by plaintiffs' counsel sustain their contention. The one claimed to be most in point is that of *In re Lowerre,* in surrogate's court, reported in 48 Misc. Rep. 317, 96 N. Y. Supp. 764. There a mortgagor gave to an attorney money to pay a mortgage to a third person. The attorney receiving the money converted it to his own use, and for years continued to pay interest to the mortgagee. It was held that he became the attorney for the mortgagor, and, having misapplied the money, became indebted to him in the amount thereof, and, on the death of both, the executors of the mortgagor were creditors, and entitled to maintain a proceeding for the sale of the attorney's real estate to pay the debt, and that, the attorney having paid interest on the mortgage debt, such payment of interest prevented the statute of limitations from running on the mortgage debt, and on the claim against the attorney's estate for the conversion of the money, and was an acknowledgment on his part of the debt. The fact that the attorney had continued to pay the interest yearly to the mortgagee was the controlling fact in the case, and that in our opinion distinguishes it from the instant case.

It will be noted that there was no motion for a new trial, and the question whether the verdict was against the weight of the evidence is not before us.

Finding no reversible error in the record, the judgment below is affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.